## CHILSON *v.* LANSING WAGON WORKS.

1. INJURY TO EMPLOYÉ—NEGLIGENCE—QUESTION FOR JURY.

   Plaintiff, an employé in defendant's factory, was injured while operating a double wabble saw, consisting of two saws placed side by side, separated only by a thin washer. The declaration alleged that pieces of timber being worked would become wedged between the saws, thereby throwing the hands of the operator upon the saw, of which defendant had notice, but failed to warn the plaintiff. The evidence tended to show that the saw was dangerous to operate for the reason stated in the declaration, and that plaintiff, while accustomed to work about machinery, had had no experience with such a saw, did not know its dangerous character, and was not informed thereof by defendant. *Held*, that the cause was properly submitted to the jury.

2. SAME—ASSUMPTION OF RISK.
    The fact that plaintiff knew that a single saw had at first been
        used to do the work, and that the double saw had been sub-
        stituted therefor, did not necessarily show that he assumed
        the risk of operating the double saw, if he was not aware of
        its dangerous character.

3. SAME.
    And whether the danger in using the saw was so apparent that
        plaintiff was chargeable with knowledge thereof, and there-
        fore assumed the risk, was a question for the jury.

4. SAME—CONTRIBUTORY NEGLIGENCE.
    The fact that the injury was caused in part by the defective
        condition of the table on which the saw was operated, and
        that plaintiff had knowledge of such condition, did not con-
        clusively establish his contributory negligence.

Error to Ingham; Wiest, J.   Submitted April 17, 1901.
Decided July 19, 1901.

Case by Calvin L. Chilson against the Lansing Wagon
Works for personal injuries.   From a judgment for plain-
tiff, defendant brings error.   Affirmed.

*Wilson & Cobb*, for appellant.

*Frank L. Dodge* (*Black & Dolan*, of counsel), for
appellee.

LONG, J.   Plaintiff was injured by a wabble saw upon
which he was working in defendant's factory.   It appears
that formerly the defendant had used a single saw for
grooving cleats for end boards to wagon boxes.   Finding
that this single saw did not do the work properly, the
foreman of defendant's shop, one John Belz, devised this
wabble saw, which was made by placing two saws to-
gether side by side.   This did not work satisfactorily, as
dust got between them; and finally he put a pasteboard
washer between the saws, about three-sixteenths of an
inch in thickness.   The saw thus constructed was run in
defendant's shop occasionally in cutting these grooves,
being operated mostly by the foreman and by a workman

by the name of Monroe. Testimony was introduced tend-
ing to show that saws built in this way are dangerous, as
they are liable to make slivers wedge in and throw the
board from under the hand; that it has a tendency to
wedge splinters between the two saws. The foreman and
superintendent of defendant's shop for 13 years, one Mr.
Reed, testified that in all his experience he had never seen
a double saw used for grooving; that a single saw was
used as far as he knew; that he had worked in shops in
Lansing, Jackson, Saginaw, Kalamazoo, Adrian, Tecum-
seh, and other places, and had there seen wabble saws,
but that he never saw one made of two saws thus fastened
together. There was some evidence also given by plain-
tiff tending to show that the table was not properly
adjusted; that it was not rigid; that the blocking used at
the time of the injury was an unsafe way of adjusting the
table.

The plaintiff was a man 51 years of age, who had
worked as a carpenter and joiner for about 30 years, and
had worked for the defendant, off and on, since 1895. He
worked first on a boring machine, then on a planer, and
then on a jointer. He had never worked on the wabble
saw until the day of his injury, September 12, 1898. The
foreman then put him to work on that saw. He testified
that the foreman told him how to work it; that he set the
saw up for him, and ran a piece over it himself, measured
the depth of the groove, and said it was all right, and
that plaintiff should go ahead with the work; that the
foreman came back a number of times to measure the
groove, and cautioned him to keep the piece against the
gauge; that the foreman did not tell him anything about
managing the saw; that the table was an ordinary rip-
saw table. He was asked:

"*Q.* Had you discovered before you were injured that
it was possible for a piece to become wedged in there?
"*A.* No, sir; I had no idea of such a thing. The
thought never occurred to me. I had never seen a saw of
this design used for grooving. The larger the saws, the

more they would spring out and let a larger sliver get between them, and the liability of slivers getting between them would be increased. The saw was made to wabble by placing a wedge on either side, so as to throw it out of true. It wabbled seven-eighths of an inch."

It appears that, after plaintiff had been at work for about five or six hours, a sliver caught in the saw, threw the piece of board upon which he was working back, and, letting his hand drop on the saw, injured it severely, cutting off two fingers and injuring his thumb.

Defendant's foreman testified that he put the plaintiff at work at the saw; that there was no other man he could spare that could run it; that it required a man of good sense to run it, and that, if he had not got sense, he had better keep away from it. He was asked:

"Q. Did you not always, when you put a man on a dangerous machine, give him instructions with reference to the probable danger?

"A. If a man thinks a machine is dangerous, he must not go near it. If I think a man is not fit for that machine, and does not know the danger, I won't put him on there.

"Q. Then you never instruct anybody that you put on a machine as to its danger?

"A. Well, I do sometimes, if I think it necessary; if I think he don't know anything about it."

It is contended by counsel for defendant that the case alleged in the declaration is not sustained by the proofs. The first count of the declaration alleges that pieces of timber being worked would become wedged or fastened between the saws, thereby throwing it from under the hand of the operator and the hand upon the saws; that of all this the defendant had notice, and failed to warn the plaintiff of such danger. There was considerable testimony showing that a saw constructed in the way this one was was liable to hook into the timber, and throw the timber operated on back from under the hand; that the teeth had too much rake and made slivers; that it was a dangerous saw to operate; that, being made of two saws, the

saws would spread apart, and thus compel the timber to be thrown back from under the hand. Many witnesses concur in the statement that it was a dangerous saw to operate. It was shown that the plaintiff had had no experience with this kind of a saw, and did not know of its dangerous character. He was not informed that it was dangerous when he was set to work upon it, though most of the witnesses, who were men employed about the building, testified that it was a dangerous machine to operate. The plaintiff had a right to rely upon the defendant's foreman to furnish him with not only a safe place to work, but also a safe machine to work with. We think there was some testimony to sustain the allegations of the declaration, and that the cause was properly submitted to the jury.

It is claimed that the plaintiff assumed the risk in engaging to work on this saw. We cannot concur in this. It is true that he knew before that they had been using a single saw to do this kind of work, and knew when he went to work that they had changed it to a double saw. He had seen the foreman grooving cleats upon this saw before he went to work, but he testified that he did not know of its dangerous character.

The testimony of the plaintiff tended to show that the table was defective, in that it was not firm and rigid; that it was supported by strips, with no device to hold them in position, and that they would work out, and permit the top of the table to drop down; and plaintiff testified that, when these strips would drop down, it would cut the grooves too deep; that, when it occurred, he would put the strips back in place; that, if he saw a piece coming out, he would put it back in place. It is the contention of counsel for defendant that plaintiff was guilty of contributory negligence in using this table knowing its defective condition. We think the question of the negligence of defendant and of the contributory negligence of the plaintiff was fully and fairly submitted to the jury under the charge of the court.

It is contended that the testimony offered by the plaintiff showed conclusively that it would be apparent to any man used to saws that pieces would lodge in a saw of this construction, and that the submission of the question to the jury whether the plaintiff knew, or ought to have known, by the exercise of care and the knowledge he had acquired by his experience, of this danger, was error. The court, we think, very properly charged the jury upon this question as follows:

"It was the plaintiff's duty to exercise care to avoid injury. He was under as great obligation to provide for his own safety from dangers known to him or discoverable by ordinary care on his part as the defendant was to provide for him. It was his duty to learn the danger. He could not go blindly to his work where danger existed. He was bound to inform himself and observe and take such knowledge of danger as could have been attained by observation. If he failed to do so, the risk was his own. And, although you find that the saw and table referred to were improperly constructed or adjusted, your verdict must be for the defendant, unless you find by a preponderance of the evidence that such defective construction or adjustment would not, by ordinary, careful observation, have been discovered."

Upon an examination of the whole record, we are satisfied that the case was fairly tried and submitted to the jury. We find no error. The judgment below must be affirmed.

The other Justices concurred.