**HINES, Director General of R. R., et al. v. PERSHIN et al.**

No. 11138—Opinion Filed May 22, 1923.

(Syllabus.)

1. **Master and Servant—Railroads—Care Required in Switching—Injuries to Yard Janitor—Negligence.**
   Where a person employed as yard janitor in railway yards is struck by a switch engine, held, that failure of the railroad company to place an employe on the lookout to warn such yard janitor of approaching danger, and the failure of said railway company to give warning to said yard janitor of the movement of its engine or trains in said yards, does not constitute primary negligence on the part of said railway company.

2. **Pleading—Sufficiency of Petition—Mode of Objection.**
   The proper practice to challenge the sufficiency of a petition is by demurrer, and where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought

3. **Master and Servant—Injuries to Railroad Yard Janitor—Duties of Employes —Evidence.**
   Where defendant railroad company offered testimony as to the duties of employes in the railway yards of said company, held, the admission on motion of plaintiff of certain rules from the printed book of rules of said company rebutting said evidence was not error.

4. **Same—Instructions.**
   Instructions of the trial court examined, and held, that the same improperly stated the law applicable to the case at bar.

Error from District Court, Adair County; E. B. Arnold, Judge.

Action by Lizzie Pershin, and Frank Pershin, May Pershin, and Elsie Pershin, minors, by Lizzie Pershin, next friend, against W. D. Hines, Director General of Railroads, and the Kansas City Southern Railway Company, for wrongful death of W. M. Pershin. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

James B. McDonough, for plaintiffs in error.

Chas. Wilson, for defendants in error.

MASON, J. This action was commenced by the defendants in error in the district court of Adair county, Okla., to recover damages for the wrongful death of W. M. Pershin, husband and father of said defendants in error, alleged to have happened in the railway yards of plaintiffs in error, at Watts, Okla., by reason of negligence of plaintiffs in error, while the said W. M. Pershin was in the employ of said plaintiffs in error as a yard janitor. From a judgment in favor of defendants in error, in the sum of $2,995, the plaintiffs in error have presented this appeal.

For convenience, the parties will hereafter be referred to as "plaintiffs" and "defendants," respectively, as they appeared in the trial court.

For reversal, it is first contended that:

"The court erred in overruling the objection of the defendants to the introduction of any evidence, which objection was made at the first offer to introduce evidence in the cause."

We will therefore examine the petition to ascertain whether or not it contains allegations sufficient to constitute a cause of action as against this mode of attack. The allegations of the petition regarding the acts of negligence complained of are substantially as follows:

That, on the 18th day of October, 1918, said W. M. Pershin, now deceased, entered upon his duties as such yard janitor; that while performing his said duties at the town of Watts, Adair county, Okla., at said division point and in said switch yards of said railway company, by and through the negligence and carelessness of said railway company and its servants, a switch engine, un-

der control of the fireman was negligently and carelessly, and without any lookout, backed without any warning against and upon the body of W. M. Pershin, and the said W. M. Pershin was thereby killed; that it was the duty of the defendant railway company to keep a lookout for servants in said switch yard; that defendant railway company failed to perform said duty or give any warning; that because of said negligence said W. M. Pershin was killed by defendants' agents and servants negligently moving said engine.

Was it a duty of the defendants to keep a lookout for, and give warning to, employes in the yards at the time the deceased was injured?

In 1 White's Personal Injuries on Railroads to Employes, sec. 328, p. 434, it is said:

"A marked distinction is recognized by the best considered cases between the obligation of the railroad company toward third parties and that existing toward its own employes, with reference to the necessity of giving warning or notice of the movement of its trains in its own yards, or at places where the business of railroading requires the constant or frequent movement of trains or engines. Where the public are expected to be using the track or right of way, due care requires notice of the movement of trains, for strangers may be present who do not know of the perils of the situation. With the company's employes, however, there is held to be no duty to give warning of the movement of trains, as this is the very object of the employment in which the employe is engaged, and a risk incident to the service, which he is held to assume under his contract of employment. Employes about railroad yards are not like strangers or third parties; they understand the situation; they know the manner of doing the business and that cars frequently pass, without notice of their approach and the danger of being struck by a backing engine or car is a risk incident to the business, as carefully conducted, and a peril of the employment."

In 2 Bailey on Personal Injuries, sec. 2727, p. 918, it is said:

"Employes of a railroad company are presumed to contract with reference to the hazards incident to the service. It is not the duty of such a company to place an employe on the lookout to warn others of approaching danger. It is their duty, without warning, to observe due care, and this is a part of their undertaking, and, any omission is at their peril. Hence it was held not negligence per se to back a train without providing a watchman on the rear car to warn a switchman of danger."

In 3 Elliott on Railroads (2d Ed.) sec. 1283. p. 629, it is said:

"The general rule is that where the danger is an extraordinary one, that is, a danger not ordinarily incident to the service, and the employer has knowledge of such danger, he is guilty of negligence if he fails to warn the employe. Where, however, the danger is obvious to a person of ordinary intelligence and one that can be known and appreciated by a person who exercises ordinary prudence and care, or where it is not an extraordinary peril, but is one incident to the service, there is no duty to give warning unless the person employed has not reached the years of discretion. Where the danger is open to the observation of a person of ordinary intelligence the general rule is that the employer is not guilty of negligence in failing to give the employe warning of such danger, since the risk is assumed by the employe."

In Crowe v. N. Y. C. & H. R. R. Co., 70 Hun, 37, 23 N. Y. Supp. 1100, it is said:

"Great care and precaution are required on the part of railroad companies, when they are moving cars in places where the general public have a right to pass, to in some manner announce their approach; but a different rule obtains in the companies' yards, where cars are being distributed and trains made up. The employes about such yard understand the situation; they know the manner of doing the business therein; that cars frequently pass along without notice of their approach; and they assume the risks incident to the business as thus conducted."

In Unfried v. Baltimore & O. R. Co., 34 W. Va. 260, 12 S. E. 512, it is said:

"* * * And we find in Patterson on Railway Accident Law (page 343, sec. 316) the author says: 'There is no implied obligation on the part of the master to indemnify the servant against the ordinary risks of the service. * * * And upon this principle train hands take the risk of injury from the negligent movement of other trains, * * * from being struck by engines or cars moving in a railway yard, without notice or unattended.'"

In Aerkfetz v. Humphries, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, Mr. Justice Brewer, in speaking for the court, said:

"At the time of the accident, plaintiff was working near the west end of the yard, when a switch engine pushing two cars moved slowly along the track upon which he was at work; the speed of the engine being about that of a man walking. Plaintiff stood with his back to the approaching cars, and so remained at work, without looking backward or watching for the moving engine until he was struck and run over by the first car. Upon these facts we observe that the plaintiff was an employe of long experience in that yard, he was familiar with the moving of cars forward and

backward by the switch engine. The cars were moved at a slow rate of speed, not greater than that which was customary, and that which was necessary to make up the trains. For a quarter of a mile east of him, there was no obstruction, and by ordinary attention he could have observed the approaching cars. He knew that the switch engine was just moving cars and making up trains; and that at any minute cars were likely to be moved along the track upon which he was working. With that knowledge, he places himself with his face away from the direction from which cars were to be expected, and continues his work, without ever turning to look. Abundance of time elapsed between the moment the cars entered upon the track upon which he was working and the moment they struck him. There could have been no thought or expectation on the part of the engineer, or of any other employe, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employe, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employes in the yard, familiar with the continuous recurring movement of the cars, would take reasonable precaution against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the approach of the cars, and enabled him to step to one side as they moved along the track. It cannot be said that under these circumstances the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employes, who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendants, and if, by any means, negligence could be imputed to them, surely the plaintiff by his negligent inattention contributed directly to the injury." Walker et al. v. Scott, 67 Kan. 814, 64 Pac. 616; Keefe v. Chicago & N. W. Ry. Co., 92 Iowa, 182, 60 N. W. 503, 54 Am. St. Rep. 542; Wabash Ry. Co. v. Skiles, 64 Ohio St. 458, 60 N. E. 576.

In the case of Buss v. Chicago, R. I. & P. Ry. Co., 77 Okla. 80, 186 Pac. 729, this court held, in the 3rd paragraph of the syllabus, as follows:

"The general rule is that no duty rests upon the railroad company to give warning to the section hands working along the right of way as to the movement of its trains. It is where the danger is an extraordinary one, that is, a danger not incident to the service, and the employer has knowledge of such danger, that he is guilty of negligence if he fails to warn the employe. Where the danger is obvious to a person of ordinary intelligence, and one that can be known and appreciated by a person who exercises ordinary prudence and care, or where it is not an extraordinary peril, but one incident to the service, there is no duty to give warning to employes, persons who have reached the years of discretion." See, also, Chicago, R. I. & P. Ry. Co. v. McIntire, 29 Okla. 797, 119 Pac. 1008.

From the foregoing, we are of the opinion that no duty rests upon a railway company to place an employe on the lookout to warn other employes in the yards of said railway company of approaching danger, and that such company owes no duty to give warning to such employes as to the movement of its engines and trains in said yards. Therefore, such allegations in the petition of plaintiffs totally failed to state a cause of action

By eliminating this portion of the petition, however, the following allegations remain:

That, on the 18th day of October, 1918, said W. M. Pershin entered upon his duties as such yard janitor; that, while performing his said duties, by and through the negligence and carelessness of said railroad company and its servants, a switch engine, under the control of a fireman, was negligently and carelessly backed against and upon the body of W. M. Pershin; that, because of said negligence, the said W. M. Pershin was killed by defendants' agents and servants, negligently moving said engine.

The allegations of this part of the petition are very incomplete, indefinite, and uncertain, and while they probably would not be sufficient against a motion to make more definite and certain or a demurrer, yet, in the absence of such motion or demurrer, we are of the opinion that they are sufficient against the present mode of attack.

This court in a long line of decisions has laid down the following rule:

"The proper practice to challenge the sufficiency of a petition is by demurrer; and

where the sufficiency of a petition is challenged solely by objection to the introduction of evidence thereunder, such objection not being favored by the courts should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite or conclusions ·of law."

We therefore conclude that the trial court did not err in overruling the objection to the introduction of evidence.

The ·plaintiffs in error next contend that the trial court erred in admitting rules No. 670, 956, 908, and 904 from the book of rules of the Transportation Department of the defendant railway· company, as follows:

"No. 670. They must see that when switching is to be done, both enginemen and firemen are on the engines so as to observe signals from both sides of trains."

"No. 956. They must not handle engines in absence of enginemen, unless authorized by master mechanics; or in causes of emergency."

"No. 908. It is the duty of the enginemen to handle the engine at all times, but the fireman may do so with permission of and in the presence of the engineman, who will be responsible for the proper handling of the engine."

"No. 904. · They must report for duty at least thirty minutes before times set for departure of their trains, see that ·their firemen are on hand, and remain on duty with their engines until delivered at the designated places at ends of trips, or they are otherwise relieved."

An examination of the record discloses that the plaintiffs offered these rules as a part of their evidence in their case in chief, but that the defendants objected to the introduction of same, for the reason that there were no allegations in the petition that would authorize the introduction of same, which objection was sustained by the trial court.

The record further discloses, however, that the engineer, Edsel, as a witness for the defendant, testified in chief as follows:

"Q. Were you the engineer that had been operating ·the engine at Watts on the night that Mr. Pershin was killed, October, 1918? A. Yes, sir. Q. Who was your fireman? A. J. L. Weir. Q. Mr. Edsel, I wish you would state what time it was and where it was that you left the engine at the time you turned it over to the fireman? Where was it? A. It was something like 75 or 100 feet north of the north water crane and on the passing track. Q. Did any body signal

you that you could go? A. Yes, sir. Q. Who? A. My conductor, R. E. Whaley. Q. After he signaled you that you could take that train home, did you have the right to go? A. Yes, sir. Q. Did you have the right to turn the engine to the fireman to be put away? A. We have indulged in that practice ever since I have been an engineer. Q. Was Mr. Weir a competent man to operate the engine and put it away? A. Yes, sir."

It further appears from the record that, after this evidence was admitted, the plaintiff in rebuttal to same again offered in evidence the rules above set out, and the same were admitted over the renewed objection of the defendants as above set forth. The record further discloses that thereafter the defendants offered and the court admitted the entire book of rules in evidence.

It frequently happens during the course of a trial that one of the parties, most frequently the defendant, as in the case at bar, gives some evidence which the plaintiff is entitled to rebut by evidence which he could not have offered as a part of the original evidence to support his claim, and not being within the four corners of the issues as originally formed. To determine whether or not such questions are relevant, the court has to take into consideration not only the issues as shown by the pleadings, but also the line of proof which has been resorted to by the respective parties. Testimony which would be clearly irrelevant or incompetent, if offered by one party in the first instance, may become very pertinent in rebuttal or explanation of evidence offered by the adversary. So, where a party introduces a witness who swears positively to an important fact, and on full examination it appears that he can swear to this fact only as an inference from the existence of another fact—a custom or practice, for example—the other party may show that the pretended fact or practice so relied on as a basis of knowledge did not exist. Wentworth v. Eastern Ry. Co., 143 Mass. 248, 9 N. E. 563. Therefore, we are of the opinion that the trial court properly permitted the plaintiffs to introduce said rules in evidence.

The uncontradicted evidence· in· this case discloses that, at the time the engine ran over the deceased, the same was being operated by the fireman, with no engineer present. This was in violation of the rules of the company, and was a sufficient state of facts to submit to the jury the question of primary negligence in moving and operating the switch engine at the time of the accident.

The court, however, failed to instruct the jury properly upon this question, but did instruct the jury over the objection of the defendants, in substance, that it was the duty of the railroad company to keep a lookout for employes working in said yards, and that failure to do so was negligence. This, we think, was error under the holding of this court in the case of Buss v. Chicago, R. I. & P. Ry. Co., 77 Okla. 80, 186 Pac. 729, supra.

The instructions of the court were erroneous in this regard; therefore, the case is reversed and remanded to the trial court for a new trial, and the plaintiffs should be permitted to amend their petition and make the same more definite and certain, so the issues could be more clearly defined.

JOHNSON, C. J., and KENNAMER, COCHRAN, and HARRISON, JJ., concur.