CHICAGO, R. I. & P. RY. CO. et al. v. HURST.

No. 17490. Opinion Filed Jan. 10, 1928.

(Syllabus.)

1. **Master and Servant—Duty to Warn and Instruct Inexperienced Servant in Use of Dangerous Machinery.**

It is the duty of the master, who assigns to an inexperienced servant the operation of a dangerous machine, not only to give him warning of the dangers incident to its use, but also to give him instructions sufficient to enable him to fairly comprehend the dangers and to perform the work with reasonable safety with proper care on his part.

2. **Appeal and Error—Conclusiveness of Verdict on Conflicting Evidence—Action Against Master for Injuries to Servant from Negligence.**

Where the evidence is sharply contradictory as to whether or not the servant was inexperienced; whether or not he was warned as to the dangers incident to, and instructed in the use of, a dangerous machine to the operation of which he was assigned; and whether or not his subsequent injury, by said machine, resulted proximately from the failure of the master to properly warn and instruct him, or from causes for which the master was not liable; and whether or not the servant assumed the risk or was guilty of contributory negligence, the issue presented is one for the jury, and, where, under proper instructions, they have passed upon same and their verdict finds reasonable support in the evidence, same will not be disturbed.

3. **Same—Judgment for Plaintiff Sustained.**

Evidence and record examined; held, that there is sufficient evidence of primary negligence of defendants, sufficient evidence of causal connection between such negligence and plaintiff's injury, that the verdict is properly supported, and that the instructions fairly present the law.

Commissioners' Opinion, Division No. 2.

Error from District Court, Beckham County; T. P Clay, Judge.

Action by Edwin Hurst against the Chicago, Rock Island & Pacific Railway Company, and R. T. Mason. Judgment for plaintiff, and defendants appeal. Affirmed.

W. R. Bleakmore and A. T. Boys, for plaintiffs in error.

A. G. Morrison and Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

BENNETT, C. On May 12, 1923, Edward Hurst, aged 22, an apprenticed helper in the shops of the Rock Island Railroad at Shawnee, Okla., was injured while operating a "wobble" saw. His injuries consisted of the loss of two fingers and injury to his other two fingers of his right hand. A "wobble" saw is constructed much like a ripsaw, being equipped with a circular saw 12 or 15 inches in diameter. The purpose of the machine is to cut a uniform groove in timbers fed into the saw. The frame work enclosing the saw is much like a square reading table with a flat top, the upper edge of the saw protrudes through a slot in the top of the table for a distance sufficient to cut the groove the depth desired. The saw is caused to wobble in its revolutions by putting on the shaft on either side of the saw round wedge-shaped washers. These cause the saw to set at an angle, and when the same revolves the wedge-shaped washers cause the revolving saw to wobble from side to side. The width of the groove cut is regulated by the acuteness of the angle or taper of the wedge-shaped washers, and the depth of the groove cut is regulated by lowering or raising the top of the table, so as to expose more or less of the revolving saw above the plane of the table, the top of which is provided with hinges, and may be raised or lowered like the lid of a box. The top is made to stay at the desired height by placing thereunder wooden wedges of the size and dimensions necessary. The top of this table, aside from the slot through which a portion of the saw protrudes, is entirely plain with the exception of a piece of timber parallel with and about 1½ inches from

129—1

the slot. This operates as a guide, and the block sought to be grooved is pressed forward, downward and against this guard while the saw is making the grooves.

At the time of plaintiff's injuries he was cutting grooves in pieces of wood eight inches long, 3½ inches wide, at one end and about one inch wide at the other end, and about 1½ inches in thickness. These blocks contained three holes in a straight line about 1¼ inches in diameter sunk to a depth of three-fourths of an inch in the block, these holes being 1¼ inches apart and lying entirely within the plane intended to be grooved.

Plaintiff in a suit for damages against said railroad and his foreman, R. T. Mason, alleged in his petition several acts of negligence, but the only one held pertinent here as supported by evidence was that plaintiff was inexperienced and unacquainted with this kind of work, to the knowledge of the defendants; that the work was dangerous and hazardous and that the handling with the naked hand of such short blocks of wood requiring the pressure to be such as to keep the wood against the guard rail, and also to press the blocks forward at the same time, so that the saw would take hold and do its work, was inherently dangerous and known by the defendants to be dangerous, and that in placing the plaintiff, who was unused and unacquainted with this work and had no experience with the operation of such a saw, upon such timbers without instructing him and warning him of the danger, was negligence.

The answer of each defendant set up: (1) A general denial; (2) contributory negligence; and (3) assumption of risk. At the conclusion of plaintiff's evidence the court held that there was no evidence of defects in the machinery and that the issue would be submitted to the jury solely upon the issue as to whether or not the defendant was negligent in placing the plaintiff at work operating a dangerous machine while inexperienced, without warning and instructions with reference to the dangers of the work.

Plaintiff testified that the defendants gave him no instructions whatever, said nothing about the dangers of operating a wobble saw, said nothing about it in the presence of the witness, and that no one gave him any instructions, and, further, that Mr. Mason, one of the defendants, a foreman for the Rock Island Railroad, who had oversight and direction over the plaintiff, instructed him to do the work; that Mr. Ma-

son was the foreman over the mill; that he did not say anything to the witness about how to do the work, but that he ran several of the blocks over the saw himself, and said that it was all right, for the witness to go ahead and run the blocks over the saw, and that Mr Mason adjusted the saw prior to running the blocks over the same; that Mr. Mason also put the wedges under the table and ran five of the blocks through the saw.

It is true that the plaintiff said that he had done pieces of timber four feet in length over the saw before this time, and had seen others do the same, but he says that he had never operated the saw on a piece of material as small as those he was using at the time of the injury.

"Q. I will ask you, Mr. Hurst, if you knew at the time you were injured and were using a piece of material of the size and length you have testified to here, you knew that it was dangerous to you to do that? A. No, I did not."

E F. Sturdevant, witness for plaintiff, testified, in substance, that he was a carpenter and contractor living in El Reno; has been in the business 18 years; became familiar with the wobble saw; had had two years' experience in the running of a wobble saw, and also became familiar with the danger of operating same; says that it is more dangerous to feed into a saw a short piece of timber than a long piece, and that in a long piece a man has a better chance to hold the timber over the saw, and that **there is less danger of its kicking his hand over the saw all the time, and that the hand would not have to 'e over the saw like it would be if the piece of timber were short.** The block should be held in the hand and pressed against the guide and also against the saw. There is considerable pressure from underneath.

Mr. Townsend, who had general control of the employees in the roundhouse, testified that it was Mr. Mason's duty to properly instruct the plaintiff. The following questions were asked and the answers given:

"Q. Before a boy is put to work on a job like that, if he has never done it before, he would have thorough instructions before he is put to work on a wobble saw? A. Yes, sir. Q. And if he hasn't had thorough instructions, you shouldn't put him on it? A. Why, certainly not. * * * Q. Mr. Townsend, you wouldn't put a boy that is inexperienced on a job on a wobble saw without giving him thorough instructions, would you? A. No, sir."

Mr. Mason, who was the immediate superior over the plaintiff, and who is also one of the defendants, testified that he had instructed the plaintiff in the use of this saw, and that it was his duty always to instruct the apprentices. He explains that he put pine blocks under the top of the table to make it rigid and prevent vibration. He says he has known the blocks to slip out or work out, and that when they did work out, the table would gradually settle, which would cause the saw to protrude further through the opening. He says that he was the one who took plaintiff off the job he was formerly working at and put him at the wobble saw, and showed the plaintiff how to hold the blocks and told him to hold the blocks just like the witness was holding them.

"Q. Why did you tell him that? A. Because it was the proper way to do. It was the only safe way. Q. Didn't he know about it as well as you? A. We don't presume anything with an apprentice. Q. You presumed that he did not know anything about it? A. On everything we showed him how to do. Q. The thing you told him was to hold the block as you were holding it? A. Exactly. Q. What did you say next? A. I don't believe I said anything then. He stood alongside of me for me to draw a few through. * * * Q. Do you know of your own knowledge whether he was holding it the way you instructed him when the injury occurred? A. I wasn't looking at him. * * * Q. Now, did you instruct him anything—you said you gave him instructions—did you instruct him anything with reference to the fact that these eight-inch pieces in going through the saw might endanger him more than long pieces he had been using? A. No, sir. I did not give him those instructions. Q. You knew he had been using longer pieces? A. He had been using all size pieces. Q. Didn't you say he never used a piece that size before. A. He might have not. Q. I did not ask you whether he might. Would you say he did use that size before? * * * A. Your honor, the proposition I am up against, I have a thousand and one different kinds of pieces. * * * I can't recall those things way back that far."

This witness further states that he regards the wobble saw as a dangerous machine. There was much other evidence on the part of plaintiff and on the part of defendants, and more or less in substantiation of their several claims, that on the part of plaintiff showing that he was not accustomed to running this machine with short timbers, that he was inexperienced; that he was not warned of the danger and was not instructed with reference to the dangers of the machine or its operation; and on the part of the defendants there was considerable testimony tending to show that not only Mason but other foremen or superior workmen in the mill had given him from time to time some instructions or some warning as to the danger in operating the wobble saw. This evidence raised a clean-cut issue between the plaintiff and defendants as to whether or not the defendants placed an inexperienced man in the operation of a dangerous machine without properly warning him of danger. Such an issue was, under the evidence, one to be determined by the jury, who returned a verdict for the plaintiff. The defendants in their motion for new trial set up nine grounds, and in their petition in error assign eight grounds of error, but in their brief present their contentions under four separate heads, to wit: (1) That there was no evidence of primary negligence or proximate cause; (2) the evidence of the accident and injury are not evidence of negligence; (3) the master is not required to give warning of obvious danger; and (4) error of the court in refusing defendants' instructions and error of the court in giving instructions.

We shall discuss these several assignments in the order in which they are dealt with in defendants' brief. The defendants lay down the doctrine of primary negligence under the well-known head: (1) That there must be the existence of a duty on the part of the defendants to protect the plaintiff from injury; (2) the failure of the defendants to perform that duty; and, (3) injury to plaintiff, resulting from such failure.

It would seem to be perfectly clear that, if the plaintiff, to the knowledge of defendants, was inexperienced, it was their plain duty to properly warn and instruct him with reference to the operation of this wobble saw, which all the proof discloses is a dangerous machine. Even the defendants claim that it is a very dangerous machine, but contend also that its dangers are so obvious that even an inexperienced man can appreciate them and should be able to foresee just what might happen from lack of care in its use. There accompanies the record a model of this machine and one of the blocks for the information of the court, and these we have given such careful attention as the unskilled in mechanics are able to give such matters in the light of the testimony, and we are of the opinion that if, as a matter of fact, the plaintiff were an inexperienced man in the operation of this saw, and was put to work upon it by his foreman with no oth-

er instructions than appear to have been given him, according to the plaintiff's testimony, it would be a breach of duty on the part of the defendants, and such an act would unreasonably subject the employee to a danger which the law would not excuse. This conclusion is reached by regarding the evidence in a light favorable to the plaintiff, as we are required to do in a case of this kind, since the rule is that if there is competent evidence reasonably supporting the verdict, the same will not be disturbed, and since the evidence favorable to the defendants will be treated as rejected, and all presumptions and deductions should be resolved in favor of the verdict. C., R. I. & P. Ry. Co. v. Newburn, 39 Okla. 704, 136 Pac. 174; Bass v. City of Atoka, 76 Okla. 58, 184 Pac. 573.

Second. Did the defendant fail to perform the duty of instructing and warning the plaintiff? This question is substantially answered by the following excerpt from the evidence:

"Q. I will ask you (plaintiff) what instructions, if any, he gave you with reference to the operation of this wobble saw on which you were engaged? A. He gave me no instructions whatever. Q. What did he say to you, if anything, about the wobble saw or its dangers? A. He never said anything to me. Q. Did he say anything in your presence? A. No. Q. Did any one give you instructions with reference to that matter? A. No."

Plaintiff further testified that Mr. Mason, his foreman, put him to work on this saw, and the following testimony is pertinent:

"Q. What did he say to you when he instructed you to do this work? A. He didn't say anything. He ran several of them over the saw himself and said it was all right and for me to go ahead and run the blocks over the saw. Q. Who had adjusted this table prior to running the blocks over this saw? A. Mr. Mason. * * * Q. You say he ran how many blocks over that? A. Five blocks. Q. Then what did he say. A. He said the saw was all right, to go on. I suppose he meant the saw. He said it was all right. 'Go on and run these blocks.' Q. Had you ever run blocks of that kind, of that size, over that saw prior to that time? A. No, sir. Q. Is that all that Mr. Mason said to you at that time with reference to running the saw and doing this work? A. Yes, sir. * * * Q. I will ask you, Mr. Hurst, if you knew at the time you were injured and were using a piece of material of the size and length you have testified to here, you knew that it was dangerous to you to do that? A. No, I did not."

It is true that the plaintiff had run some pieces of perhaps four feet in length over this saw before that time, but, as is shown by the plaintiff's testimony and it seems to us to be obvious from an examination of the model, it is essentially more dangerous to operate this machine with shorter pieces of timber where the hands are always just over the saw. The plaintiff's evidence on that matter is as follows:

"Well, in running these blocks, they were so short you would have to have your hand directly over the saw all the time and all at once this block was kicked from underneath my hand and it was so unexpected and I had to push down on the block all the time, that my hand came in contact with the saw before I could move my hand."

Upon examination of this model, and also the block which was used at that time, we find that this groove, more than an inch in width, is cut over a plane into which three holes are bored, and that the diameter of these holes is practically the same as the width of the groove. We cannot say what the effect on the block would be when the saw, which is cutting the groove the full width of the wobble, passes over the holes which are sunk in this timber. The evidence of defendants indicates that the passage of the block over the saw is practically uniform, and that it requires no force to hold it in place. The testimony of plaintiff was that while he was holding his hands on the block the same was suddenly and for some inexplicable reason kicked out from under his hand. We must accept this as true for it is not inherently improbable, and after a careful examination of this filler block, we are led to believe that, as the saw would pass from cutting the solid groove all the way across into the space covered by the holes, the block would leap forward, and when the saw reached the other side of the hole and began to take hold it would be retarded. This would appear to be natural, but, at any rate, we are not called upon to determine just why or how it came about, for, with no evidence to the contrary, we must assume that the plaintiff was doing just what he was told to do and that he was acting without negligence, and it therefore seems clear to us that there was sufficient evidence of the breach of duty on the part of the defendants in this record. The very fact that Mason said that it was his duty to warn the plaintiff and to instruct him, and that he undertook this duty, is evidence that the plaintiff was inexperienced, to defendants' knowledge, and required some instruction and warning.

Third. Was the plaintiff injured by reason of the failure of defendants to properly instruct and warn him of danger? What would be the natural consequence of putting an inexperienced man to operate a machine of this kind? What would an ordinarily prudent man expect to be the result of such operation? What is the purpose of instructing and warning an inexperienced workman? What is the need for it? It is true that the mangled hand of the plaintiff, and, in fact, the accident, is not evidence of negligence, nor is it evidence of failure to warn or to instruct, for accidents happen to those who are entirely competent and experienced.

A case much like the one at bar, entitled Wikstrom v. Preston Mill Co. (Wash.) 93 Pac. 213, contains almost similar facts and similar defenses. It was held that it was a case for the jury. Also, the case of Chilson v. Lansing Wagon Works, 128 Mich. 43, 87 N. W. 79. This was a wobble saw case, and is very similar to the case at bar, both as to law and facts. See, also, Bailey, Personal Injuries (2nd Ed.) vol. 1, pp. 637, 656, 661.

These principles have been followed by Schoner v. Allen, 25 Okla. 22, 105 Pac. 191, where the court says:

"Where the master knows, or ought to know, the dangers of the employment, and knows, or ought to know, that the servant, by reason of his immature years or inexperience, is ignorant of, or unable to appreciate such dangers, it is his duty to give him such instruction and warning of the dangerous character of the employment as may reasonably enable him to understand its peril."

The court further states at page 26 (105 Pac. 192):

"We think the doctrine equally well settled by the authorities that, although the machinery, or that part of it complained of as especially dangerous, is visible, yet, if by reason of the youth and inexperience of the servant, he is not aware of the danger to which he is exposed in operating it, or approaching near to it, it is the duty of the master to apprise him of the danger, if known to him."

The opinion, further quoting from a Massachusetts case (Sullivan v. India Mfg. Co., 113 Mass. 396), says:

"It may frequently happen that the dangers of a particular position for or mode of doing work are great, and apparent to persons of capacity and knowledge of the subject, and yet a party from youth, inexperience, ignorance, or general want of capacity may fail to appreciate them. It would be a breach of duty on the part of the master to expose a servant of this character, even with his own consent, to such dangers. unless with

instructions or cautions sufficient to enable him to comprehend them, and to do his work safely."

In the case of Fisher v. Prairie, 26 Okla. 337, 109 Pac. 514, the court says:

"It is the duty of a master, who has actual knowledge that a servant is inexperienced in the work for which he is employed, to use reasonable care in cautioning and instructing such servant in respect to the dangers he will encounter and how best to discharge his duties, and he is not relieved from such duty by the fact that the servant solicited the employment and represented himself to be competent."

The second paragraph of the syllabus reads as follows:

"A servant impliedly assumes the risks incident to the service he contracts to perform, and, in the absence of knowledge to the contrary, the employer may assume, as between them, that one applying for a particular employment possesses the skill and judgment requisite to the safe and proper performance of his duty; but if the employment be dangerous, as known to the master, who has also reason to know that the servant is inexperienced or without capacity, such servant, even with his own consent, cannot be required to assume the risk therefrom, unless he is cautioned and instructed sufficiently to enable him to reasonably comprehend the dangers and to do the work safely."

See, also, Neversweat Mining Co. v. Ramsey, 89 Okla. 128, 202 Pac. 787; Midland Valley R. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103; Silurian Oil Co. v. Morrell, 71 Okla. 250, 176 Pac. 964; New v. McMillan, 79 Okla. 70, 191 Pac. 160.

We think, from an examination of these cases and applying the law derived therefrom to the facts in the case at bar, we can conclude that there is a direct causal connection between the breach of duty by the defendants and the injury which the plaintiff suffered. Of course, it is a question for the jury to determine as to whether or not the failure of the defendants to warn and instruct the plaintiff was the direct and proximate cause of his injury. The court cannot determine this, but we do hold that there is sufficient evidence in the record from which the jury might reasonably determine that the injury to plaintiff was due to the negligence of the defendants in failing to instruct and warn him of the danger.

Defendants cite the case of C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876, to the effect that where "there is no evidence reasonably tending to show that such party sought to be charged was guilty of negli-

gence, it is error for the trial court to submit such issue to the jury." We accept that as elementary. To the same effect: Midland Valley v. Graney, 77 Okla. 54, 185 Pac. 1088; Gypsy Oil Co. v. Ginn, 88 Okla. 99, 212 Pac. 314; and Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 Pac. 438.

The Quapaw Gas Company Case simply holds that, where the evidence of plaintiff is such, after considering all the inferences and conclusions to be reasonably drawn therefrom, an essential element of liability is wholly lacking; and where a verdict for plaintiff in any amount must necessarily be based on speculation and conjecture as to the essential element of liability not shown by the evidence, it is proper to sustain a motion for a directed verdict. The doctrine in this case is not applicable because we hold that there is sufficient evidence of causal connection between the failure to warn and instruct and the injury to plaintiff.

Defendants' second contention is that the evidence of accident and injury is not evidence of negligence. It is quite true, that "the mere fact that the servant received injury does not establish, even prima facie, the negligence or breach of duty of the master," and further that there must be a causal connection between the negligence averred and the injury received to entitle plaintiff to recover.

We have examined the cases of C., R. I. & P. v. Nagle, 55 Okla. 235, 154 Pac. 667; C., R. I. & P. v. Foltz, 54 Okla. 556, 154 Pac. 519; Midland Valley Ry. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088; and O'Neil v. Vie, 94 Okla. 68, 220 Pac. 853. These cases announce no new doctrine. In the case of O'Neil v. Vie, supra, the court in the third paragraph of the syllabus uses these words:

"Negligence must be shown by evidence, and the evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury in the sense of more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results."

Would not an ordinary man foresee that an injury would likely result in the ordinary course of things if he placed an inexperienced young man in the operation of a dangerous machine without instructing him and warning him of its dangers? To ask this question is but to answer it. Plaintiff was injured within 15 minutes after starting to work with the saw.

We can see no application of the case of Hines, Director, v. Pershin, 89 Okla. 297, 215 Pac. 599, which had to do with the shifting of a train in a railroad yard, and the question of a dangerous machine or the inexperience of an employee was in no wise involved. Several cases are cited which hold that a warning is never required from a master to a servant when the servant is apprised of the peril, or where it is obvious and appreciated, and this because the law does not require a useless thing to be done. Herron v. Himmelberger-Harrison Lumber Co. (Mo. App.) 230 S. W. 661.

Even the defendants' witnesses in the case at bar said that they would not have put plaintiff at work on this saw without thoroughly warning him that it was dangerous. That comports with our idea of common humanity. There is nothing fanciful about it. It is just the doing of that which an ordinarily prudent man would think right and proper and necessary to be done. Of course, if the plaintiff knew all about this saw and its peculiarities and the dangers from operating the same with the timbers in hand, no law would require the defendants to do a vain thing to inform him about that of which he had already full knowledge, but that is not this case.

The fourth assignment is error of the court in refusing defendants' instructions, and error of the court in giving instructions. At the close of the testimony defendants requested the court to instruct the jury first and second that the verdict should be for the defendants.

Instructions Nos. 1 and 2 requested by defendants are in effect peremptory instructions to the jury to find a verdict for the defendants. No discussion of these is necessary except to say that we hold that there was sufficient evidence to be submitted to the jury upon the issue submitted. The third and fourth instructions are, we think, plain statements of the law applicable. In substance, these charges are approved in the Schoner v. Allen and Fisher v. Prairie Cases, hereinbefore referred to. Instruction No. 5, when construed together with the other sections of the charge, substantially follows the doctrine of the cases in this jurisdiction

Plaintiffs in error, on page 68 of their brief, says:

"The defendant also requested instruction No. 5, which reads as follows: 'You are instructed that evidence of the accident and resulting injury is no evidence of negligence on part of defendants, or either of them.' " (Marked "Given in substance.")

The brief proceeds to say:

"While the court in denying this instruction noted that it was given in substance, yet, we find no instruction by the court covering the subject-matter of this instruction."

Instruction No. 8 of the court reads as follows:

"You are further instructed that evidence of an accident and of resulting injury are in and of themselves no evidence of negligence."

It is quite difficult for this court to understand why the above exception was pressed upon our attention. The court in plain terms in instruction No. 7 uses the following words:

"You are instructed that a person who is operating a machine is charged with knowledge of any and all dangers that are obvious and plain to be seen, and his employer is only bound to instruct and warn him of dangers incident to his employment, and only bound to instruct him where he is inexperienced."

Under the evidence in this case the plaintiff was given a hazardous undertaking. He was inexperienced and did not know the dangers incident thereto. Under the plaintiff's evidence the defendants knew that he was inexperienced, and gave him some sort of instruction, that is, his foreman ran through the machine five pieces of timber as a demonstration. The plaintiff says this was all the instructions he received, except to go forward with the work. The defendants' evidence, on the other hand, tends to show that they gave him full instructions as to the work. That was a question for the jury, and, under instructions which we conceive to be substantially correct, they have passed upon this issue.

Defendants contend that since the dangers were obvious, the risk was either assumed, or that the plaintiff, by remaining with the work, was guilty of contributory negligence. Under article 23, sec. 6, Constitution, these defenses are in all cases whatsoever questions of fact, and shall "at all times be left to the jury."

The defendants say that the refusal of their instruction No. 3 is erroneous. It reads as follows:

"You are instructed that in this case the evidence shows the injury was occasioned by the plaintiff's hand coming in contact with a circular wobble saw, and that it is a matter of common knowledge that a circular saw in operation is dangerous and that the defendant is not liable, because of the fact that a saw is dangerous and that it employed the plaintiff to operate it."

This is unsound for obvious reasons. His requested instruction No. 4 is as follows:

"You are instructed that a person who is operating a machine is charged with knowledge on any and all dangers that are obvious and plain to be seen, and the employer to warn him or instruct him as to such dangers."

This instruction is not complete. Suffice it to say that we have examined carefully the record in this case, the charges requested, and the instructions given, and we find no substantial error, and the verdict and judgment of the trial court is affirmed.

DIFFENDAFFER, HERR, JEFFREY, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 39 C. J. p. 486, §602; p. 515 §622; anno 44 L. R. A. 33; 4 A. L. R. 488; 18 R. C. L. p. 565-567; 3 R. C. L. Supp. p. 825; 4 R. C. L. Supp. p. 1196. (2) 39 C. J. p. 1123, §1317; p. 1170, §1352; p. 1179, §1361; p. 1194, §1373; 18 R. C. L. p. 567; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73. (3) 39 C. J. p. 1047, §1266; p. 1092, §1284; p. 1259, §1442.