**SILURIAN OIL CO. v. MORRELL et al.**

No. 8475—Opinion Filed Dec. 17, 1918.

(176 Pac. 964.)

(Syllabus.)

1. **Master and Servant — Inexperienced Servant—Warning—Assumption of Risk.**

It is the duty of a master who has actual knowledge that a servant is inexperienced in the work for which he is employed to use reasonable care in cautioning and instructing such servant in respect to the dangers he will encounter, and how best to discharge his duties; and the servant does not assume the risks from the dangers of the employment of which he is ignorant, and as to which he has been given no reasonable instruction, although they are ordinary hazards of the service, unless they are so obvious that even an inexperienced man would observe them by the exercise of ordinary care.

2. **Death—Cause of Death—Circumstantial Evidence.**

Where an accident occurs, resulting in death, and there is no direct proof as to how the accident occurred, the manner of its occurrence may be shown by circumstantial evidence, from which the jury may infer the manner and cause of the accident, if the inference is a reasonable, although not necessary, resulting fact.

3. **Same — Presumption — Avoidance of Danger.**

Where a person is killed, and there are no eyewitnesses to the accident the plaintiff is entitled to the benefit of the presumption that the deceased did not voluntarily incur danger or the risk of death.

4. **Master and Servant—Inexperienced Servant — Personal Injury — Negligence— Question for Jury.**

Record examined, and held, that the court is unable to say as a matter of law that the master's culpability might not reasonably be inferred by the jury from evidence which indicated that the servant although he had general knowledge of the dangers of his employment, had received no special warning in regard to the particular danger to which the injury may reasonably be attributable; and that, under the circumstances, the information which the master failed to communicate was necessary to enable the servant to obtain an intelligent comprehension of the danger.

5. **Misdirection of Jury—Statute.**

Section 6005, Rev. Laws 1910, provides: "No judgment shall be set aside or new trial granted by an appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

6. **Appeal and Error—Misdirection of Jury —Evidence — Substantial Violation of Constitutional or Statutory Right.**

After an examination of the entire record it does not appear that the misdirection of the jury and the improper admission or rejection of evidence complained of have probably resulted in a miscarriage of justice or constitute a substantial violation of any of the constitutional or statutory righs of the defendant.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by M. P. Morrell and Lenice Morrell, a minor, by her next friend, M. P. Morrell, and as next of kin to Loris Morrell, deceased, against the Silurian Oil Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Harris, Nowlin & Singleton for plaintiff in error.

West & Hagen, for defendants in error.

KANE, J. This was an action commenced by the defendants in error, plaintiffs below, as the only surviving next of kin of Loris Morrell, deceased, against the plaintiff in error, the Silurian Oil Company, because of the alleged wrongful death of their son and brother by gas asphyxiation. Upon trial to a jury there was a verdict in favor of the plaintiffs upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The third paragraph of the petition, the only one necessary to notice, alleges, in substance: That at the time of the injury and death of the deceased the defendant was maintaining and operating natural gas wells and pipe lines in Oklahoma, for the production and transportation of natural gas; that said defendant, then and there owning a well producing natural gas willfully, negligently, and wrongfully permitted the natural gas to escape from well No. 3, on the Star lease in Creek county; that the deceased, Loris Morrell, was engaged as a "roustabout" by said defendant, for the purpose of laboring upon said lease in connection with said well; that said defendant, well knowing that said deceased was inexperienced in and did not know the dangers attendant upon his duties as a roustabout, negligently and wrongfully directed said deceased to erect a wooden frame around the casing of said well and to throw dirt within and on the same and against the casing so as to prevent, hinder, and stop the flow of gas from and around the outside of said casing, where it was escaping from various holes, defects, and interstices in and around the casing beneath the surface of the earth; that said deceased was not instructed by defendant, and did not know, appreciate, and understand the danger incident to carrying out the order aforesaid; that said deceased thereupon in obedience to said order, without fault on his part, approached said well and came close to the same, and then and there, by reason of the abnormally great volume of gas escaping, which danger was increased by the abnormal pressure of gas in said well, as was well known to defendant, was overcome by gas and killed to the great damage of plaintiff, etc.

The answer of the defendants was a general denial, contributory negligence, and assumption of risk. Upon the close of plaintiffs' evidence the defendant interposed a demurrer thereto, which was overruled, and thereupon the cause was submitted to the jury upon the evidence of the plaintiff, after which the defendant requested a peremptory instruction for judgment in its favor, which was refused. The grounds for reversal relied upon by counsel for defendant are summarized in their brief as follows:

"(1) The court erred in overruling the demurrer to the evidence and in refusing to grant the request for peremptory instructions.

"(2) The court erred in its instructions to the jury.

"(3) The court erred in refusing to give to the jury the instructions requested by the defendant.

"(4) The court erred in overruling the objection of the defendant to the admission of evidence and motions to strike out evidence.

"(5) The court erred in overruling the motion for new trial."

The particulars in which they claim the evidence is insufficient to justify the court in submitting the case to the jury are stated by counsel for defendant in their brief as follows:

"(1) That there is no evidence tending to show that the deceased was inexperienced in and did not know the dangers attendant, upon the operation of works about gas wells.

"(2) That there is no evidence tending to show that the deceased did not know the danger in carrying out the orders of the defendant.

"(3) There is no evidence tending to show that the deceased was engaged in the work he was directed to perform at the time of his death."

We agree with counsel for the defendant that:

"The allegations of express failure to instruct and the obviousness of the danger are the vital allegations of this cause of action; and, unless they are proven, the demurrer should have been sustained or the peremptory instructions given."

But we are unable to agree with them that the evidence of the plaintiffs is deficient in the particulars above pointed out. The evidence shows that the deceased was a minor some 19 years of age at the time of his death; that he was reared at St. Louis, and had no experience or knowledge as to the duties of a roustabout working on oil and gas wells, or of the dangers incident to this class of work, prior to his employment by the defendant a few months before his death. It is further shown that in carrying out the directions given him by the superintendent of the company he secured the assistance of another roustabout, one McDaniels, and together they proceeded to well No. 3, from which there was escaping a large amount of natural gas. He was ordered to build a platform around the casing, where

the gas was escaping beneath the floor of the rig, for the purpose of holding earth, which was to be thrown and packed around the casing so as to stop the escaping gas. It does not appear that he was warned by the defendant of the dangers incident to the work he was ordered to do.

Mr. McDaniels testified substantially as follows:

Well, we went out to see about the gas to shut it off. I left Morrell at well No. 3, and proceeded to inspect other wells in the vicinity. When I returned to well No. 3 after an absence of about 35 minutes I found Morrell lying, face downward, on the floor of the rig, dead, with his head back from the casing some five or six inches, and the tools which he carried to the well for the purpose of doing the work lying near by on the floor of the rig.

McDaniels also testified that, while he and Morrell were doing some work about this well on the previous day, Morrell had been overcome by gas on two occasions, but each time returned again to his work after being revived, although warned not to do so by the witness.

It is argued that, in view of this latter circumstance, it cannot be said that the plaintiff was not aware of the dangers incident to the work he was ordered to do on the day of his death, and therefore it was not incumbent upon the foreman to warn him. We think there can be no doubt that the plaintiff knew of the general asphyxiating qualities of natural gas. The evidence, however, tends to show that Oklahoma natural gas contains different poisonous ingredients, among them being carbon dioxide, or choke damp, and carbon monoxide, or fire damp; that choke damp is the heavier of the two gases, and one may walk erect with impunity in fire damp and not become aware of the presence of the choke damp, unless he falls to the ground or floor or stoops over in such a way as to breath or inhale the choke damp, which on account of its greater density remains closer to the surface; that choke damp produces instant death by a spasm of the glottis, and fire damp, if it produces death, does so by a much slower process through which the gas affects the blood corpuscles.

Based upon the evidence of witness McDaniels as to the manner Morrell acted when he was overcome by gas the day before his death, Dr. Garrison was of the opinion that he had been affected by fire damp, the less poisonous gas, on that occasion. There was some evidence tending to show that his death was caused by inhaling choke damp. There is no evidence tending to show that the plaintiff knew or was warned of the presence and the deadly nature of choke damp.

Counsel for plaintiffs contend that from the testimony of Mr. McDaniels and the doctors and the consideration of certain physical circumstances such as the posture of the body of deceased when found, the nature of the work he was ordered to do, the manner in which the tools were scattered on the floor of the rig about, etc., the jury may have reasonably inferred that the deceased, while stooping down to measure the floor of the rig for the purpose of ascertaining the dimensions of the frame or platform which he was to construct beneath it, came in contact with a strata of choke damp, which caused his instant death. This theory seems to us to be reasonably supported by the evidence. At least it seems more probable than the theory advanced by the defendant that the deceased inhaled the gas voluntarily, either through habit or for the purpose of self-destruction.

In 1 Labatt on Master and Servant, § 253, numerous cases are cited where the servant has been allowed to recover for the reason that the court felt itself unable to say as a matter of law that the master's culpability might not reasonably be inferred from evidence which indicated that the servant, although he had been warned in general terms as to the danger of the work, had received no special warning in regard to the particular danger to which the injury was due, or no explicit instructions as to the proper manner of avoiding it, and that, under the circumstances, the information which the master had thus failed to communicate was necessary to enable the servant to obtain an intelligent comprehension of the danger.

It was not incumbent upon the Morrells to show by direct evidence the exact manner and cause of the injury; this may appear from the circumstances of the case. Waters-Pierce Co. v. Desilms, 18 Okla. 107, 89 Pac. 212; Lichtenberg v. City, 94 Wash. 391, 162 Pac. 534.

The plaintiff in a civil cause is not required to prove his case beyond a doubt. All that the plaintiff upon this branch of his case is required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. St. Louis & S. F. Ry. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973.

It has been held that the presumption against voluntarily incurring danger is of itself some evidence of lack of knowledge of

a latent defect (C. & E. I. Ry. Co. v. Heerey, 203 Ill. 492, 68 N. E. 76), and that, where there are no eyewitnesses, the love of life speaks as a silent witness against the assumption of risk, against contributory negligence, against suicide. Rober v. N. P. Ry., 25 N. D. 394, 142 N. W. 22; A., T. & S. F. Ry. Co. v. Hill, 57 Kan. 139, 45 Pac. 581; Grimm, Adm'x v. Omaha, E. L. & P. Co., 79 Neb. 387, 112 N. W. 620.

Considerable space is taken by counsel for defendant in their brief discussing the duty of the master toward the servant when the latter is engaged in making a dangerous place safe, and many of their requested instructions treat of this subject. In the view we take of the case this question is not important. It is, as we have seen, the duty of the master to warn his inexperienced servant of the hidden and latent dangers of his employment, and this rule applies as well to a servant who is engaged in making a dangerous place safe as to any other class of employes. If a laborer engaged in an occupation attended with danger is left by his employer in ignorance of latent dangers and suffers in consequence, the employer undoubtedly is liable in damages for the injury. Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464; Petroleum Co. v. Wantland, 28 Okla. 481, 114 Pac. 717; Fisher v. Prairie Oil Co., 26 Okla. 337, 109 Pac. 514.

The remaining assignments of error present for review errors belonging to the class covered by section 6005, Rev. Laws 1910, which provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence. or, as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Of these it is sufficient to say that after an examination of the entire record it does not appear that the errors of this class complained of have probably resulted in a miscarriage of justice, or that they constitute a substantial violation of any constitutional or statutory right of the defendant.

Finding no reversible error in the record, the judgment of the court below is affirmed.

All the Justices concur.