**GRANEY v. MIDLAND VALLEY RY. CO.**

No. 11713—Opinion Filed June 9, 1925.

Rehearing Denied July 14, 1925

**1. Master and Servant—Nonliability for Injuries to Servant from Departure from Usual Method of Performing Duties.**

The master is not liable for injury to one of his servants, where the servant departs from the ordinary and usual way and manner of performing the duties for his master, which results in injury to the servant. The servant departs from the ordinary and usual manner of the performance of his duties for his master at his own peril.

**2. Same—Servant's Own Negligence.**

The injury to the servant during such departure, if the injury grows out of and is incidental to the departure, is the primary negligence of the servant.

**3. Same—Demurrer to Evidence Sustained.**

Record examined; held, to support the sustaining of demurrer to plaintiff's evidence.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Kay County; J. W. Bird, Judge.

Action by J. Graney against the Midland Valley Railway Company, for damages on account of alleged personal injury. The court sustained a demurrer to plaintiff's evidence. Plaintiff brings error. Affirmed.

W. N. Maben and J. F. King, for plaintiff in error.

O. E. Swan and Sam K. Sullivan, for defendant in error.

Opinion by STEPHENSON, C. The plaintiff in error, plaintiff below, was in the employ of the defendant as a rear brakeman on one of its freight trains at the time he received a personal injury. The line of railway of the defendant and that of the Missouri, K. & T. intersects, at right angles, in the city of Muskogee. The defendant's line crosses the Missouri, K. & T. track in an easterly and westerly direction. There is a horizontal bar of timber, hinged to a post, which is left standing across the defendant's track at the intersection of the railway lines. This horizontal bar is described as a crossing gate. It appears that this crossing gate is left set against the defendant's trains at all times. Therefore, it is necessary for the crew of the defendant's train, in order to use the crossing, to swing the gate back across the Missouri, K. & T. track. After the train has cleared the crossing it is then the duty of the crew to swing the gate back across the defendant's line of railway to its normal station. The train on which the plaintiff was acting as rear brakeman was headed east. The head brakeman swung the gate across the Missouri, K. & T. track, so as to permit the passage of the defendant's train. It was the duty of the rear brakeman to swing the gate from the Missouri, K. & T. track, back across the defendant's track, and leave the same in such position. The occupation of the plaintiff as rear brakeman on the day of the injury made it necessary for him to perform this duty after the train had cleared the crossing. The rear car, or caboose, of a freight train is about 20 or 25 feet in length. The caboose is equipped with a platform at either end of the car, and the employes may enter and pass out of the car at either end. When the crossing gate is swung across the Missouri, K. & T. track or left in position across the defendant's track, the free end of the arm rests in the shoulder of a post set alongside of the track. The post to which the arm is attached or anchored and the post on which the free end of the arm rests are situated about 5 or 6

feet from the track. The plaintiff testified at considerable length as to the way and manner the injury occurred. It appears from the plaintiff's evidence that he stepped off the front end of the caboose, on the south side of the track, back about 75 or 80 feet west of the crossing gate. The plaintiff then traveled east in the direction the train was moving, for a distance of about 45 or 50 feet, alongside the moving train, where he stumbled over a clinker or cinder which tripped him. The plaintiff, in falling, threw his arm across the rail which resulted in the car wheels mangling the arm. The arm was amputated some five or six inches below the elbow. The plaintiff testified that he dropped off the front end of the caboose so that he could run along by the side of the moving train and reach the crossing gate, so that he would be in position to throw the gate back across the defendant's track and then board the moving train. The plaintiff testified that it was necessary to do the work in this manner in order to avoid the necessity for the train to stop for him to board, otherwise it would be necessary for the plaintiff to walk some five or six blocks to the depot, after clearing the gate.

The plaintiff fails to show that the cinder or clinker was alongside of the track on account of the negligence of the defendant. It was necessary for the plaintiff, either to show that the cinder or clinker was placed alongside of the track on account of the negligence of the defendant, or if it was not there by the negligence of the defendant, that it had so remained a sufficient length of time that the defendant might be charged with knowledge of its presence. But we do not desire to be understood as deciding that this would have been an act of negligence in relation to this plaintiff.

Conceding the act complained about to constitute negligence, the burden was on the plaintiff either to show that the cinder or clinker was there on account of the negligence of the defendant, or that it had remained alongside of the track for a sufficient period of time to charge the defendant with notice of its presence.

It would be necessary for the plaintiff to show, in addition to this proof, that the negligence, if any, violated some legal duty owing by the defendant to the plaintiff at the time the injury occurred.

The plaintiff could have stepped off the front end of the caboose even with the post which retained the wooden arm. He would have been required then to travel about five

or six feet, at a right angle from the track, to the post on which the arm rested. It was necessary for the caboose to clear the track before the plaintiff could take the arm from across the Missouri, K. & T. track, and commence to place the same in position over the defendant's track. The plaintiff would have traveled five or six feet at right angles from the track, in passing from the place where he alighted from the caboose, to the point where he was required to commence the act of placing the gate across the defendant's track. The plaintiff could have made the two steps from the track at right angles to this post before the train traveled the length of the caboose, so as to clear the track for the gate. There was no occasion for the plaintiff to alight from the caboose some 75 or 80 feet west of the gate in connection with his duty in closing the gate. Any occasion for alighting at the point where he did could serve no purpose except for the personal gratification of the plaintiff in some respect.

It would not be contemplated that a rear brakeman would in any instance alight from his caboose some 80 feet from the point where the crossing gate is situated, in order to be in a position to close the gate when the train cleared. The defendant could not anticipate that its brakeman would engage in performing the particular duty in such manner he testified he did at the time the injury occurred. It was an easy matter for the plaintiff to alight from the caboose about opposite the post which supported the arm, and walk to the post, while the train cleared the track. The defendant had notice that its train employes would pass from the side of the train in a southerly direction, to the location of the post, some five or six feet away.

It was the duty of the defendant to use reasonable care to maintain the premises between the track and the post in a reasonably safe condition for the employe in closing the gate. The defendant owed no duty in this respect beyond the area where the plaintiff would ordinarily be required to travel in performing this duty. Seventy-five feet, or even 80 feet west of the gate is without the area where the plaintiff would be expected to travel in closing the gate. If there was a clinker or cinder along the track outside of the area where the plaintiff would be expected to travel in performing the duty of closing the gate, it would not be negligence, in any event, in this case on the part of the defendant. The servant cannot travel beyond his scope of action, as in this case, and be protected by the obligations which the master owes his employes while they are engaged in the usual and ordinary manner of performing some proper duty for the master.

If the plaintiff had alighted from his caboose a half mile distant, for the purpose of traveling along the track to close the gate when the train cleared, and had suffered the injury immediately after alighting from the train, the question of negligence, in the latter instance, would not be different from that presented in this case. When the servant departs from the ordinary and usual scope of action, even though ultimately intending to pass within his scope of action to perform a service for the master, any injury to him, without the scope of action, is the result of the primary negligence of the plaintiff. We think the plaintiff failed to prove a cause of action upon two grounds:

(1) Conceding the plaintiff alighted and was traveling along the track at a place ordinarily and usually required, to close the crossing gate, the plaintiff failed to show that the cinder, or clinker, was alongside of the track on account of the negligence of the defendant.

(2) If the cinder, or clinker, was at the place where plaintiff testified he tripped and fell, the danger, if any, was beyond that area ordinarily and usually required to be traveled by an employe engaged in the performance of such service. Lee v. Central R. Co. (Ga.) 12 S. E. 307; Cook v. U. S. Smelting Co. (Utah) 97 Pac. 28; St. L. & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126; C., R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 Pac. 1182; St. L. & S. F. Ry. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 26 Cyc. p. 1258; anno. 47 L. R. A. (N. S.) 909, 23 A. L. R. 309; 18 R. C. L. p. 660; 3 R. C. L. Supp. p. 839, 5 R. C. L. Supp. p. 996. (2) 26 Cyc. p. 1258.