## OKLAHOMA WHEAT POOL TERMINAL CORPORATION v. RODGERS, Adm'x.

No. 26729. April 13, 1937.

Rehearing Denied July 13, 1937.

624

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

Otjen & Carter and Dyer & Smith, for defendant in error.

HURST, J. This is an action to recover damages for the death of John Henry Rodgers, who was killed when he fell from a "man lift" in a grain elevator owned and operated by the Oklahoma Wheat Pool Terminal Corporation. The trial of the case revealed the following facts: The grain elevator was six floors high, and in addition to the stairways there was a man lift running from the ground floor to the top. The lift consisted of an endless belt running over revolving drums at top and bottom, to which were attached platforms or steps at intervals of about 30 feet. About five feet above each step was a cup shaped handhold attached to the belt. The platforms were just large enough to accommodate one man at a time and they ran through holes cut in the floors for that purpose. There were no guards around these holes.

The deceased had been employed by the defendant as weigh-master for about two years, and his duties required him to ride the lift from 10 to 50 times a day. The evidence disclosed that on the day of the accident, he came to work sick from eating ice cream the night before. The record clearly shows that he had been quite ill since about four o'clock that morning and looked pale and upset when he came to work, although he talked and walked normally. The foreman advised him not to work, but he said he thought he could make it and would call if he wanted another man. The foreman saw him get on the lift, and talked to him as he started up. A witness on the third floor, called by plaintiff, testified that he heard the belt come up and was waiting for deceased to arrive, but that he heard him belch when he was about 15 or 20 feet below this floor and then he heard a crash. No one actually saw him fall. The men on the ground floor heard the crash as his body fell through the hole in the second floor and hit the first landing of the stairway a few feet above the ground. The witnesses were not certain as to how soon the lift was stopped after the accident, or who stopped it. But the employee on the third floor testified that when he heard the crash he rushed to the shaft, but could not see down because of the dust, so he ran down the stairs. When he reached the second floor, which was 56 feet below, the lift was stopped. He then noticed a broken step about five or six feet above the second floor.

Plaintiff introduced an expert witness who testified that the step was broken off clean at a place where there had been an old fracture in the cast-iron braces. Plaintiff also introduced evidence that belching was a habit with the deceased and was not necessarily connected with an upset stomach or any illness.

The widow of deceased brought this action on two theories, designated as "causes of action" in her petition. The first cause of action contains certain allegations of negligence to the effect that the lift was operated without any guards or means of protection to prevent employees from falling off; that an insecure footing was afforded in that the steps were beveled at the edges, had no guards of any kind around them, were smooth and worn, and that they were slippery, insecure, and unsafe by reason of an accumulation of sediment; that the steps were improperly constructed in that they were of single thickness instead of double thickness, and the handholds were of improper shape and improperly spaced; that the defendant neglected to provide safety switches for starting and stopping the lift. It is then alleged in substance that because of this negligence, the deceased "slipped from his footing" and fell to his death.

The second cause of action makes the allegations of the first a part of the second, but in substance alleges that the defendant was negligent in furnishing steps of single thickness instead of double and in permitting the braces connecting the steps to the belt to become fractured and worn, then it is alleged that "by reason of the defective condition of said step on which John Henry Rodgers was standing said step gave way and the said John Henry Rodgers was precipitated and thrown down the shaft" to his death.

Defendant filed a motion to require plaintiff to elect which theory she was basing her action on, but this motion was overruled. This motion was renewed before the introduction of any evidence, and at the close of the testimony the defendant again moved that plaintiff be required to elect which theory she chose to stand on, but these motions were also overruled. The case was then submitted to the jury with a resulting verdict in favor of plaintiff. From the judgment thereon, defendant brings this appeal.

1. Defendant first contends that the court committed reversible error in overruling its motion to require the plaintiff to elect upon which cause of action she would rely. We think this motion should have been sustained before the defendant was required to answer. The counts are clearly inconsistent and the proof of one necessarily disproves the other. The substance of the first count is that the deceased slipped off the step upon which he was riding because of its slippery and insecure condition and the improper condition of the handholds, while the second count is that the step upon which he was standing gave way and broke beneath him. The first count says nothing of the broken step. He was either on the broken step or he was not. If he was not, the second count would not be available. If he was, the allegations of the first count would not be the cause of his death. The true rule is that a party to an action can set forth in separate counts several grounds for recovery or several defenses so long as they are not inconsistent to the extent that they are repugnant and the proof of one necessarily disproves the other. Small v. Comer (1935) 171 Okla. 418, 43 P. (2d) 716; Gypsy Oil Co. v. Colbert (1936) 179 Okla. 321, 65 P. (2d) 505; 49 C. J. 746.

The plaintiff argues that the granting or refusing of the motion to elect is addressed to the sound discretion of the trial court, and that the overruling of the same will not justify a reversal. He cites a number of cases in support of this contention. But an examination of the cases cited discloses that the grounds for recovery or the defenses were not inconsistent as in the instant case. Also it is apparent from the petition, as well as from the evidence, that the cause of the accident is not within the special knowledge of the defendant and it cannot be said that plaintiff would be oppressed in being made to anticipate what turn the evidence may take. The evidence was equally known to both parties. The distinguishing features between these two counts are the different theories of the cause of the death. Each must be based on inferences from physical facts equally within the command of both parties.

2. It is also urged that the court committed reversible error in permitting Dr. DeBarr, an expert witness, to testify, over the objection of defendant, that in his opinion the defects in the man lift were responsible for the loss of life. We think this point is well taken. It was proper to permit the expert witness to testify as to whether the man lift was defective in the particulars charged by the plaintiff, but it was not proper to permit him to give his opinion on the ultimate fact of the cause of the fall. This was for the jury to determine. The question called for a consideration of all the facts and circumstances in evidence, including the sickness of the deceased and his experience as well as the technical testimony regarding the condition of the lift. Thus this opinion included matters foreign to the subjects regarding which this witness was qualified as an expert. Bilby v. Thomas Gin-Compress Co. (1912) 33 Okla. 254, 124 P. 1093; Federal Oil & Gas Company v. Campbell (1917) 65 Okla. 49, 183 P. 894; Kaw Boiler Works v. Frymyer (1924) 100 Okla. 81, 227 P. 453; Mid-Co. Petroleum Co. v. Allen (1925) 110 Okla. 101, 236 P. 426.

The plaintiff contends that the testimony was competent under the authority of 22 C. J. 642 and 716; Shawnee Gas & Electric Co. v. Hunt (1912) 32 Okla. 368, 122 P. 673; Oklahoma Gas & Electric Co. v. Oliphant (1935) 172 Okla. 635, 45 P. (2d) 1077; Prickett v. Sulzberger (1916) 57 Okla. 567, 157 P. 356; Great Western Coal & Coke Co. v. Malone (1913) 39 Okla. 693, 136 P. 403; Joyce on Evidence, sec. 367, p. 459, and cases from other jurisdictions. These authorities support the rule that Dr. DeBarr could give his opinion as to whether the man lift was defective and in what respects and regarding all matters of a technical nature within the field for which he was qualified as an expert, but they do not support the contention that the testimony above referred to was proper.

We have carefully considered the entire record and briefs, and are convinced that the evidence as to the cause of this unfortunate accident is not clear and free from doubt. Because of that fact we think it was reversible error to overrule the motion to require plaintiff to elect, and to admit the incompetent evidence herein re-

ferred to, and we cannot hold it to be harmless. It is not necessary to discuss the other propositions raised by the defendant.

The judgment is reversed, with directions to grant a new trial, and to proceed not inconsistent with the views herein expressed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, WELCH, and GIBSON, JJ., concur. CORN, J., dissents. PHELPS, J., absent.