LOWDEN et al. v. LARSON, Adm'r.

No. 29335.   April 16, 1940.

Rehearing Denied May 7, 1940.

*102 P. 2d 144.*

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, all of Oklahoma City, for plaintiffs in error.

J. D. Lydick, of Oklahoma City, for defendant in error.

HURST, J. This is an action for wrongful death, brought by plaintiff Larson, as administrator of the estate of Kit Barley Brewer, deceased, against defendants as Trustees of the Chicago, Rock Island & Pacific Railway Company. The trial court overruled defendants' motion for an instructed verdict, and submitted the case to the jury, and from judgment rendered on a verdict for plaintiff defendants appeal.

The facts, as established by the evidence, are that plaintiff's decedent, Brewer, was employed in the water service department of defendants as water service mechanic. He had been an employee of the railway company for a period of approximately ten years prior to his death, which occurred June 22, 1937. Shortly before that date he had been instructed to place some 36-inch casing in a water well belonging to the railway company near Shawnee. This operation required the forcing of five-foot lengths of steel casing into the well. In order to accomplish this, Brewer was instructed by his superiors to have made, in the railway company shops, an appliance termed a "ratchet" jack, which consisted of a cog or ratchet wheel mounted on an iron car axle, to which axle were attached lengths of steel cable running through pulleys to the top of the joint of casing. The ratchet wheel was turned by the use of a dog and lever, and wound the cables around the car axle, thus exerting the force necessary to press or pull the casing into the well. Apparently Brewer was not familiar with such appliances, or with the casing of water wells, as he was not shown to have had any previous experience with such work, but a rough sketch of the appliance was given him, and he ordered the equipment made. After the appliance had been partially completed, however, he attempted to force the casing into the well by a different method, apparently of his own design. This consisted in placing a heavy timber on top of the casing. A jack was placed upside down on top of this timber, a heavy wooden block was placed on top of the jack, and steel cables were stretched tightly across this wooden block, and fastened to heavy timbers buried in the ground on each side of the well. Brewer, acting on instructions from his superiors, procured two employees of the railway company, who were temporarily laid off from work, to assist him. Neither of them had any previous experience in the casing of wells. While they were operating the jack, and attempting to force the casing into the well by the pressure exerted by the jack against the tightly stretched cables, one of the cables broke under the strain and threw the block of wood which had been placed between the cables and jack against Brewer with great force, inflicting injuries resulting in his death. Experts produced by plaintiff testified that both the method which Brewer was instructed to use and the method which he adopted, each involving the use of steel cables subjected to great strain, were dangerous unless used by experts; that one experienced in the use of steel cables could readily detect when they reached a breaking point due to excessive strain by a peculiar humming or singing, which would not be apparent, or if heard would not be understood, by one not experienced in their use. The men assisting Brewer testified that they were not familiar with work of this nature, and did not know of the singing or humming which indicated that a steel cable was approaching a breaking point.

1. Defendants divide their grounds for reversal into five propositions. The first three may be grouped together, and

briefly stated are that there was no negligence on the part of defendants shown, but that the proximate cause of the injury was the failure of Brewer to follow the plan or method which he was directed to use, and in adopting his own method. Reliance is placed on Barnsdall Oil Company v. Ohler, 48 Okla. 651, 150 P. 98, and other cases holding that where the master has provided an adequate stock of appliances in good condition, and an imperfect instrumentality is selected by the servant, resulting in his injury, the master is not responsible, and on Graney v. Midland Valley Ry. Co., 111 Okla. 128, 238 P. 838, and Lay's Adm'r v. Harlan Producers Coal Corporation, 262 Ky. 612, 90 S. W. 2d 716. In the Graney Case, it was held that where a servant departed from the usual and customary method of performance, and the injury was incidental to and grew out of the departure, the master was not liable. In the Lay's Adm'r Case the servant was instructed to repair a telephone line, which was defective due to some of the insulation wearing off. After this defect had been repaired, the servant, without any direction from the master, and without the master's knowledge, removed the telephone line from the supports to which it had been attached, and attempted to relocate it on poles carrying a high voltage line, and in such attempt was fatally injured. The court held that in attempting to relocate the line he clearly departed from the duty assigned to him by his employer, which was to repair the defect in the line, and that the employer was under no duty to maintain in a safe condition the place where he met his death.

We do not consider these cases, and similar cases cited by defendants, decisive of the question involved in the present case. Herein there is no showing that the appliances selected by Brewer were in any way defective, nor that he was negligent in their selection. The chief contention of plaintiff is the failure to furnish competent fellow servants, and a safe place to work, and to warn the inexperienced servant of the dangers to be encountered by him in the performance of the duty assigned. From the evidence it appears plain that the method which defendants instructed Brewer to use was equally as dangerous as the one he employed. Both methods involved the same element of danger, the risk of breaking a steel cable by subjecting it to excessive strain. The rule of law that a servant may not recover where a safe method has been provided by the master, and the servant disregards it and employs an unsafe method, has no application. It is the duty of the master to provide reasonably careful, prudent, and competent fellow servants. New v. McMillin, 79 Okla. 70, 191 P. 160; Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49; Chicago, R. I. & P. Ry. Co. v. Devore, 43 Okla. 534, 143 P. 864. And one of the elements of competency is reasonable skill or experience in the duties assigned to him and his fitness or qualifications for the performance thereof. Labatt's Master & Servant (2d Ed.) sec. 1088; Producers & Refiners Corporation v. Castile, 89 Okla. 261, 214 P. 121; 39 C. J. 529; 18 R. C. L. 722. Herein the evidence is undisputed that the breaking of the cable, and the consequent injury to Brewer, might have been avoided by the employment of a servant who was skilled or experienced in such matters. As said in S. H. Kress & Co. v. Nash, 183 Okla. 544, 83 P. 2d 536:

"The fact that there may be dangers connected with the general class of work the servant is directed to perform, which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due to dangers which the exercise of ordinary care would remove. Negligence is the absence of care according to the circumstances of the case, and is always a question for the jury when reasonable men might differ as to the facts, or as to the inferences to be drawn from them."

In Beasley v. Bond, 173 Okla. 355, 48 P. 2d 299, this court, in referring to the question of whether sufficient men had been furnished to safely move a pole used in dismantling an oil storage tank, said:

"The manner of attempting to move it on the occasion of the injury to plain-

tiff's intestate without an adequate force of men might reasonably be attributed to the lack of the kind of organization and executive planning and direction it was the master's duty to supply. Whether any such inferences as are suggested in the foregoing discussion should have been drawn by the jury as the triers of the facts is, of course, another matter. But it was, we think, properly a matter for the jury's determination in the light of all the facts and circumstances."

In Fisher v. Prairie, 26 Okla. 337, 109 P. 514, the court held that where an employee was, to the master's knowledge, inexperienced in the work for which he was employed, it was the master's duty to instruct such servant in respect to the dangers he would encounter, and that the servant did not assume risk from dangers of which he was ignorant. See, also, Labatt's Master & Servant (2d Ed.) sec. 1146; 18 R. C. L. 565; 39 C. J. 486. Defendants urge that the evidence shows that Brewer selected the men who worked with him, and that it being undisputed that the method pursued, the material used, and the servants assisting him were chosen by him, defendants are not liable. But the evidence also shows that he had been instructed to pick his helpers from such employees of defendants as were temporarily laid off from their regular work, and there is no showing that men experienced in the use of steel cables, and familiar with the danger attending such use, were available. And while evidence was produced showing that this well and another one were subsequently cased by the method which Brewer was instructed to follow, we do not regard this as conclusively establishing that such method was safe, in view of the testimony of experts that both methods were equally dangerous. We think the trial court properly overruled defendants' request to instruct a verdict, and submitted the case to the jury.

2. Defendants' fourth contention is that the trial court erred in refusing to give instructions requested by them. They urge that their requested instructions properly presented their theory of the case to the jury, and that they were entitled to have their theory presented.

But examination of the requested instructions discloses that instructions 2 and 5, if given, would have amounted to an instructed verdict for defendants, since the jury would have been required to return a verdict for defendants if they found that Brewer departed from the method for casing the well which was prescribed by defendants, or if they found that he was in charge of and directing the work at the time the injury was received, neither of which facts was disputed by plaintiff. The other instructions requested dealt with the suitability or defective condition of the appliances selected by Brewer in attempting to pursue his method of casing the well, and were substantially covered by instructions given. We think the trial court did not err in refusing to give the requested instructions.

3. In their fifth and last contention defendants challenge the instructions given, especially those numbered 9, 11, 15, and 17. By instruction No. 9 the jury were instructed that it was the duty of the master to furnish an employee a reasonably safe place to work, reasonably safe appliances and machinery with which to work, and reasonably careful and competent fellow servants, and that the failure to so furnish them would constitute negligence. Defendants say that this instruction invades the province of the jury by attempting to tell it what facts in the case constituted negligence. We are unable to see the justice of such criticism, as we think the instruction states only rules of applicable law, leaving the existence or nonexistence of the facts to be ascertained by the jury from the evidence before them. Nor do the cases cited by defendants support their contention. Instructions numbered 11, 15, and 17 are criticised as statements of abstract principles of law not applicable to the facts in the case. This general statement is apparently based on the failure of the trial court to give the instructions requested, telling the jury that if they found certain specific facts, their verdict should be for defendants. Defendants fail to point out in what respect the instructions as given could

230

have misled the jury, and we are unable to find any ground for such assertion, or to see wherein they are inapplicable to the issues presented for determination.

Affirmed.

BAYLESS, C. J., and OSBORN, CORN, and GIBSON, JJ., concur.