OKLAHOMA NATURAL GAS CO. v. HARLAN.

No. 34740.   Dec. 26, 1951.

Rehearing Denied April 8, 1952.

Application for Leave to File Second Petition for Rehearing Denied May 6, 1952.

*243 P. 2d 730.*

Fred Mock and Kulp, Pinson & Lupardus, Tulsa, for plaintiff in error.

Gilliland, Ogden, Whithington & Shirk, Oklahoma City, for defendant in error.

BINGAMAN, J. This action was commenced by the administratrix of the estate of Ralph E. Pickens, deceased, to recover damages against Oklahoma

Natural Gas Company, a corporation, for the wrongful death of Ralph E. Pickens. From the verdict and judgment in favor of the plaintiff, in the amount of $12,000, the defendant appeals.

The essential facts are that at the time of his death decedent was employed by the defendant company, near Crescent, Oklahoma. Although the decedent had been employed by this company for a period of about one year, the work in which he was then engaged was not his regular employment but was relief work for a fellow employee who was on vacation.

The duties of this relief work, at which the decedent had been engaged for only a few days, consisted of the draining of traps under the gas line of the defendant. These traps were bell shaped receptacles located at convenient intervals along the bottom of the pipe line in which fluids collected. The same were drained by the opening of a valve which permitted the pressure of the gas in the line to force the fluid out through a drain pipe which was vented into a pit a short distance from the valve. An experienced workman could tell by the sound of the escaping gas when the fluid had all been exhausted into the vent pit. A less experienced person could walk to the rim of the pit and determine by looking at the end of the pipe when the fluid had all been drained. After the trap was emptied of fluid it was the duty of the workman to close the valve and go on to the next receptacle and repeat the process.

On the 30th day of June, 1948, the decedent, immediately after his lunch hour, drove in the defendant's truck to one of these traps near Crescent, for the purpose of draining same. This particular trap and vent pit were situate in a low wooded area where the prevailing winds did not have the usual opportunity to carry away the vented gas fumes. The day in question was a sultry summer day, following rainfall the previous night. After opening the valve to drain the trap the decedent walked to the edge of the vent pit and some 25 or 30 minutes later his dead body was found face downward in this pit. The arms were folded under and the body was faced downward in a few inches of fluid in the bottom of the vent pit. Autopsy disclosed the lungs were full of water which was the lower strata of fluid in the pit. It also disclosed the absence of any heart trouble or disease. There were no marks on the body or any other evidence of foul play. The absence of any evidence of struggle indicated the decedent was either unconscious or dead at the time he struck the fluid in the vent pipe.

Decedent was 19 years of age at the time of his death and was survived by a dependent father, 62 years of age, and a dependent mother, 58 years of age. He was earning approximately $185 per month.

For reversal the defendant urges: (1) There is not sufficient medical testimony to support the circumstantial evidence as to the cause of death; (2) the verdict is inconsistent with the physical facts; (3) a master is not required to guard an employee against consequences not reasonably to be anticipated; (4) decedent was a trespasser when he left his place of employment at the valve and walked to the edge of the vent pit; (5) the verdict was influenced by passion, prejudice or sympathy and is excessive; and (6) there is no testimony reasonably tending to support the allegations of negligence.

On its first proposition defendant relies on Oklahoma Wheat Pool Terminal Corp. v. Rodgers, 180 Okla. 623, 70 P. 2d 1080, Hicks v. Davis, 32 Okla. 195, 120 P. 260, and Bilby v. Thomas Gin Compress Co., 33 Okla. 254, 124 P. 1093. In the Oklahoma Wheat Pool Terminal Corporation v. Rodgers case, we held it was error to permit an expert witness to testify that the defects in a manlift were responsible for the loss of life. We held that such expert witness could testify as to whether the

manlift was defective, but when he expressed an opinion on the ultimate fact of the cause of the loss of life he invaded the province of the jury. In Bilby v. Thomas Gin Compress Co., supra, we held an expert witness could not testify to the ultimate fact that machinery was exactly as warranted. In Hicks v. Davis, supra, the rule was announced:

"When material or relevant facts can be or have been introduced before the jury, and the latter are able to deduce a reasonable inference from them, no reason exists for receiving opinion evidence."

Plaintiff produced as witnesses the city chemist of Oklahoma City, and another who was a practicing physician. Both of these witnesses testified that unconsciousness could be produced from the inhalation of gas such as was escaping from the pit where young Pickens was found, if he inhaled sufficient quantities to prevent him from getting oxygen. They indicated that the exact time necessary to produce unconsciousness would vary with the condition of the individual and the amount of gas inhaled. It is true that one witness, in response to a hypothetical question, which defendant objected to as incomplete, stated that in his opinion young Pickens was rendered unconscious from some of the gaseous ingredients and fell over and drowned. It may be that this answer went further than was permissible but no objection was made to the answer and no motion to strike or to advise the jury not to consider it was made. Therefore, any error was waived. Witnesses for the defendant testified that while in their judgment it was impossible for one to become overcome by gas in the open air, the inhalation of sufficient quantities would render one unconscious.

This evidence, together with the evidence of lack of heart trouble, or of any other disease or impaired conditions of the organs of decedent which might cause him to fall into the pit, was in our judgment sufficient to warrant the trial court in submitting the case to the jury and to sustain their verdict.

In the case of Silurian Oil Co. v. Morrell, 71 Okla. 250, 176 P. 964, this court had under consideration a very similar case. In that case another 19 year old boy, working as a roustabout, was directed to construct a frame around a well casing from which natural gas was escaping. He was not warned by his employer of the particular dangers incident to such work and some 35 minutes after he was left in this employment by the foreman his dead body was discovered face downward on the rig floor. From the evidence there, as in the case here, it appears that such gas contains poisonous substances, many of which are heavier than air and the inhaling of which may produce unconsciousness or death. In pointing out that it was not incumbent upon the plaintiff to prove by medical experts the exact cause or manner of the injury and death, we said:

"It was not incumbent upon the Morrells to show by direct evidence the exact manner and cause of the injury; this may appear from the circumstances of the case. * * * The plaintiff in a civil cause is not required to prove his case beyond a doubt. All that the plaintiff, upon this branch of his case, is required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence, than from any other cause."

The contention that a verdict inconsistent with the undisputed physical facts may not stand is based upon the testimony of defendant's witnesses that they had never heard of anyone being overcome by gas in the open air, and that in their opinion it was impossible for a person to be so overcome because the diffusion of gas when it reached the open air would prevent its concentration in sufficient quantities to have such effect upon anyone.

In support of this contention defendant cites Oklahoma Railway Co. v. Ivery, 201 Okla. 245, 204 P. 2d 978, in which we said that where the testimony of witnesses was shown by physical facts in evidence to be impossible or false, the verdict would not be permitted to stand. But we also said that in a case where the jury was the trier of facts and there was any competent evidence to support the verdict, the fact that there was a conflict in the evidence or that the evidence was such that reasonable men might differ as to its effect, a verdict of the jury based on such evidence would not be set aside. There is here no testimony as to the conditions existing at the time the decedent went to the drip pit, although there is testimony as to its condition a short time later. Therefore, there is no showing of any physical fact which would contradict the testimony of the witnesses for plaintiffs that it was possible for the inhalation of gas arising from the pit to have rendered the decedent unconscious when he inhaled it, and the conflicting testimony of the witnesses for plaintiff and defendant rendered the case one for the determination of the jury.

In Griffin Grocery Co. v. Scroggins, 145 Okla. 9, 293 P. 235, we said:

"Where an accident occurs, resulting in death, and there is no direct proof as to how the accident occurred, the manner of its occurrence may be shown by circumstantial evidence, from which the jury may infer the manner and cause of the accident, if the inference is a reasonable, although not necessary, resulting fact."

In support of the next contention, that the consequences to this employee could not reasonably be anticipated, Atchison, T. & S. F. R. Co. v. Kennard, 199 Okla. 1, 181 P. 2d 234, and Oklahoma Gas & Electric Co. v. Wilson, 172 Okla. 540, 45 P. 2d 750, are cited. In the first case the defendant railroad operated its train at a normal speed through a construction area when no slow signs were posted by the construction company. The vice-principal employee of the construction company, on whom rested the responsibility of directing the slowing of the trains, was held to be responsible for his own injury by failing to post slow signs for one of the trains. In the second case the electric transmission company had constructed its power lines in accordance with the standards of the Oklahoma Corporation Commission. A long gin pole used in handling pipe came in contact with the electric line resulting in the death of the workmen. Both of these cases are readily distinguishable from the case at bar.

The evidence here shows that the decedent was not warned by his employer of the danger from the gas fumes at this vent pit. It appears he may have been warned, at safety meetings in connection with his employment by this company, of the general dangers of the business, but the employee he relieved for his vacation admittedly did not particularly warn him of the dangers of these fumes at such vent pits. In fact, this employee himself apparently failed to appreciate the danger and although he stated he had been warned against the same, he admitted he had hundreds of times gone to the brim of the pit and looked in to satisfy his curiosity.

We held in Chicago, R. I. & P. R. Co. v. Hurst, 129 Okla. 1, 263 P. 113, following Schoner v. Allen, 25 Okla. 22, 105 P. 191:

"Where the master knows, or ought to know, the dangers of the employment, and knows, or ought to know, that the servant, by reason of his immature years or inexperience, is ignorant of, or unable to appreciate such dangers, it is his duty to give him such instruction and warning of the dangerous character of the employment as may reasonably enable him to understand its peril."

Again in Silurian Oil Co. v. Morrell, supra, considering the dangers of gas as herein involved, this court held:

"It is, as we have seen, the duty of the master to warn his inexperienced

servant of the hidden and latent dangers of his employment, and this rule applies as well to a servant who is engaged in making a dangerous place safe as to any other class of employee. If a laborer engaged in an occupation attended with danger is left by his employer in ignorance of latent dangers and suffers in consequence, the employer undoubtedly is liable in damages for the injury."

In 56 C. J. S. p. 887, §188, the author says:

"It is not necessary to make a master liable for a negligent omission or act that he should have contemplated or should have been able to anticipate the particular consequences, the form of the accident, or the nature of the injury, and where the act or omission of the master threatens danger, the fact that the accident itself was unusual, extraordinary, or even unheard of does not relieve him from liability."

We followed the above announced rule in Black Gold Petroleum Co. v. Webb, 186 Okla. 584, 99 P. 2d 868, citing 45 C.J. p. 918, §484.

The regular employee performing the duties, in which the decedent was engaged at the time of his death, was able to tell by sound when the fluid had been drained from the trap and thus know when to close the valve. Obviously, it would take time and some practice to train the ear to detect the difference in sound to know when to close the valve. It would be only natural for the employee, while he was acquiring this training, to go to the rim of the pit to watch the drain pipe and determine the exact moment at which the valve should be closed.

The decedent was at the time of his death engaged in discharging the duties of his employment and he was apparently at the rim of this vent pit for the purpose of determining the time when he should close the valve. In the case cited by defendant of Gypsy Oil Co. v. Ginn, 88 Okla. 99, 212 P. 314, the injured employee, at the time of his injury was not engaged in any work for his employer and not doing anything in the course of his employment, but was at an entirely different part of his employer's premises from his place of employment. In Graney v. Midland Valley R. Co., 111 Okla. 128, 238 P. 838, also cited by the defendant, the employee departed from the usual manner of discharging his duties and followed a new and more hazardous method which resulted in his injury. In the case at bar the decedent was pursuing the only method available to him and apparently a method frequently followed by the regular employee of the company.

We find nothing in the record to indicate the jury was influenced by passion, prejudice or sympathy and nothing so indicating is pointed out by the defendant.

Although it is strongly urged the testimony does not support the verdict because it fails to directly establish how the accident occurred, after a careful check of the record, we are unable to agree with this conclusion. This case comes within the rule announced in the Fairmont Creamery Co. v. Rogers, 189 Okla. 320, 116 P. 2d 983:

"This court has in many cases demonstrated that it is unnecessary to establish by direct evidence just how the accident occurred in which the injuries complained of were received. Among these are Weleetka Cotton Oil Co. v. Brookshire et al., 65 Okla. 293, 166 P. 408; Silurian Oil Co. v. Morrell, 71 Okla. 250, 176 P. 964; St. Louis-San Francisco Ry. Co. v. Starkweather, 148 Okla. 94, 297 P. 815; Highway Construction Co. v. Shue, supra. To produce such evidence where, as in the cited cases and the present case, there were no eyewitnesses to the accidents involved, is often impossible. However, the cause of the accident and resulting injury may be inferred from circumstantial evidence if the inference is a reasonable though not a necessary one."

Affirmed.

HALLEY, V.C.J., and CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur. GIBSON, J., dissents for the reason that the verdict is excessive.